UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

**AMANDA MAE BACHMAN**,                          :

                          :

                Petitioner,     :

                          :

       -against-     :     **ORDER ON PETITION**
                          :     **FOR RELIEF UNDER 28**
**C. FLOWERS, WARDEN, FCI DANBURY**,     :     **U.S.C. § 2241**

                          :

               Respondent.     :     3:25-CV-2149 (VDO)

---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Petitioner Amanda Mae Bachman ("Petitioner") is a sentenced federal inmate in the custody of the Bureau of Prisons ("BOP") currently housed at FCI Danbury. Petitioner has filed a Petition for Relief under 28 U.S.C. § 2241 with a memorandum[1] and supporting exhibits (together, the "Petition").[2] Petitioner challenges the BOP's decision to return her to BOP incarceration from prelease custody and its failure to apply time credits under the First Step Act ("FSA") to her sentence.[3] She asserts violations of her rights under the First and Eighth Amendments of the United States Constitution.[4]

On January 6, 2026, the Court issued an order for Respondent to show cause why Petitioner's request for relief under 28 U.S.C. § 2241 should not be granted.[5] In a memorandum filed on February 20, 2026, Respondent argues that the Petition must be denied because

---

[1] Pet., ECF No. 1.

[2] Pet. Exs. ECF No. 1-1.

[3] ECF No. 1 at 1–8, 11–13.

[4] *Id.*

[5] Order, ECF No. 8.

Petitioner is not entitled to relief under 28 U.S.C. § 2241.[6] To date, Petitioner has not filed any opposition or response to Respondent's memorandum.[7]

For the following reasons, the Court denies Petitioner's request for relief under 28 U.S.C. § 2241.

## I.    FACTUAL BACKGROUND

On December 14, 2018, judgment entered in the United States District Court for the Northern District of West Virginia in Petitioner's underlying criminal case, where she was convicted of one count of conspiracy to distribute more than fifty grams of amphetamine in violation of 21 U.S.C. §§ 841 and 846.[8] Petitioner was sentenced to 135 months in prison with a five-year term of supervised release.[9]

Petitioner was later incarcerated at Federal Medical Center Lexington Satellite Camp for Women ("FMC Lexington"), where a BOP staff member assertedly sexually assaulted her in 2023.[10] She claims that other FMC Lexington staff members retaliated against her for reporting the sexual assault.[11]

Thereafter, Petitioner was transferred to FCI Waseca and then released to prelease custody at the residential reentry center ("RRC") in Clarksburg, West Virginia, operated by

---

[6] Resp. to O.T.S.C., ECF No. 10.

[7] The Court denied Petitioner's motion for appointment of counsel on March 3, 2026. Order, ECF No. 11.

[8] *See United States v. Bachman*, 17-CR-15 (N.D. W.V), ECF No. 811.

[9] *Id.*

[10] ECF No. 1 at 11.

[11] *Id.* at 11–12.

Dismas Charities, Inc ("Dismas") on March 2024.[12] While residing at Dismas, Petitioner remained a federal inmate serving her federal sentence and subject to the BOP's inmate disciplinary policy: Program Statement 5270.09, Inmate Discipline Program.[13] Upon her arrival at Dismas, Petitioner acknowledged her receipt of a copy of the Federal Prohibited Acts (as listed in BOP Program Statement 5270.09) and Dismas's Rules, Regulations, and Minimum Restrictions.[14]

BOP inmates transferred to an RRC are supervised by the RRC staff members, who are federal contractors responsible for overseeing inmates in the community.[15] When RRC staff members hold an inmate accountable through the BOP's disciplinary program, a BOP Discipline Hearing Officer ("DHO") reviews the RRC staff disciplinary procedures and actions to ensure compliance with BOP policy and satisfaction of required process due under the Fifth Amendment.[16]

---

[12] *Id.* at 12; Ex. 1 to Resp. to O.T.S.C., Grimm Decl. at ¶ 6, ECF No. 10-1.

[13] ECF No. 10-1 ¶ 6.

[14] *Id.* ¶ 7.

[15] *Id.* ¶ 8.

[16] *Id.* "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). But "it has long been clear that inmates retain due process rights in prison disciplinary proceedings." *Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir. 2003). Thus, "to comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" *Williams v. Menifee*, 331 Fed. App'x 59, 60 (2d Cir. 2009) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). In addition, a disciplinary disposition must be supported by "some evidence." *Superintendent*, 472 U.S. at 455 ("We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."); *see Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)("some evidence" means "there was 'reliable evidence' of the inmate's guilt.").

Petitioner was charged with six disciplinary infractions while she remained at Dismas from March 28 through July 2, 2024.[17] Petitioner was determined to have committed all of the charged disciplinary infractions.[18] In his declaration, DHO Grimm explains that he was assigned to review the disciplinary proceedings conducted by the staff at Dismas.[19] He declares that he reviewed the disciplinary record following Petitioner's hearings by the Center Discipline Committee for each infraction and confirmed that Petitioner had been afforded the procedural safeguards due and that "some evidence" supported the disciplinary determinations in compliance with due process under the Fifth Amendment.[20] Petitioner's only appeal—which related to her last disciplinary infraction—was denied.[21]

On July 5, 2024, Petitioner was removed from Dismas and returned to incarceration within BOP due to her repeated disciplinary issues.[22]

Petitioner's projected release date is September 16, 2027, via good conduct time pursuant to 18 U.S.C. § 3624(b).[23] In addition, BOP has calculated Petitioner's anticipated release date—with application of her FSA time credits—as September 30, 2026.[24]

---

[17] ECF No. 10-1 ¶¶ 10–11, 19–20, 28–29, 37–38, 46–47, 55–56.

[18] *Id.* ¶¶ 18, 27, 36, 45, 54, 63.

[19] *Id.* ¶ 9.

[20] *Id.* ¶¶ 18, 27, 36, 45, 54, 63–64. Grimm's averments are substantiated by the attached disciplinary records for each infraction. *See id.* at 16–110.

[21] *Id.* ¶ 64.

[22] *Id.* ¶ 65; *see also* Ex. 2 to Resp. to O.T.S.C., Mori Decl. ¶ 7, ECF No. 10-2. Mori is the BOP Residential Reentry Manager for the Pittsburgh Reentry Management Office, which is responsible for residential reentry services in the judicial districts of Western Pennsylvania; Northern New York; Western New York; Southern West Virginia; and Northern West Virginia. *Id.* ¶¶ 1, 4.

[23] ECF No. 10-1 ¶ 5, *see id.* at 12 (Sentence Monitoring Computation Data).

[24] *Id.*

## II.   LEGAL STANDARD

### A.   28 US.C. § 2241

Under 28 U.S.C. § 2241, a federal prisoner "in custody in violation of the Constitution or laws or treaties of the United States" may seek habeas review in federal court. 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Thus, a Section 2241 petition may be used to challenge "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see, e.g., Wilson v. Flowers*, No. 25-CV-1357 (VDO), 2025 WL 3719411, at *1 (D. Conn. Dec. 23, 2025) (noting petitioner's challenge to BOP's refusal to apply his FSA time credits was properly brought in petition under 28 U.S.C. § 2241). Petitioner "bears the burden of proving that he [or she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his [or her] burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

### B.   FSA

On December 21, 2018, Congress enacted the First Step Act ("FSA"), which was intended to encourage federal inmates to participate in evidence-based recidivism reduction programs ("EBRRs") and other productive activities ("PAs"). *See* 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A). Inmates earn time credits upon successful participation in these activities and the time credits qualify the inmates for early release from custody. *See id.*

5

With enough time credits, an inmate may be transferred sooner to prerelease custody, either in a RRC, home confinement, or on supervised release. *See* 18 U.S.C. § 3624(g)(2). Inmates classified as minimum or low risk of recidivism are eligible to earn either ten or fifteen days of credit for every thirty days of successful participation in EBRRs or PAs. *See* 18 U.S.C. § 3632(d)(4)(A). If the inmate's sentence includes a period of supervised release, "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months." 18 U.S.C. § 3624(g)(3).

Relevant to violations of prelease conditions, 18 U.S.C. § 3624(g)(5) provides:

> If a prisoner violates a condition of the prisoner's prerelease custody, the Director of the Bureau of Prisons may impose such additional conditions on the prisoner's prerelease custody as the Director of the Bureau of Prisons determines appropriate, or revoke the prisoner's prerelease custody and require the prisoner to serve the remainder of the term of imprisonment to which the prisoner was sentenced, or any portion thereof, in prison. If the violation is nontechnical in nature, the Director of the Bureau of Prisons shall revoke the prisoner's prerelease custody.

## III.    DISCUSSION

Petitioner challenges the BOP's decision to return her to incarcerated custody and its refusal to apply her FSA credits toward her release as violations of her constitutional rights and the FSA.[25] In her memorandum, Petitioner asserts that she was sexually abused and threatened with bodily harm while confined at FMC Lexington in violation of her rights under the Eighth Amendment;[26] subjected to First Amendment retaliation when she was forced to provide information about her boss at FMC Lexington and after she made a Prison Rape Elimination Act ("PREA") report at FCI Waseca;[27] and mistreated at the Dismas and charged

---

[25] ECF No. 1 at 7–8, 10–13.

[26] *Id.* at 10–11.

[27] *Id.* at 11–12.

6

with disciplinary infractions resulting in her return to BOP incarceration at FCI Danbury, where she allegedly suffers from the improper refusal of the BOP to apply her FSA credits so that she may be released to home confinement.[28] Petitioner requests immediate release and a Court declaration that the BOP violated her rights under the First and Eighth Amendments.[29]

Section 2241 requires that a prisoner must be "illegally held" to bring a habeas action challenging the execution of her sentence. 28 U.S.C. § 2241(c). Petitioner cannot seek relief under Section 2241 for violation of her constitutional rights in the past. *See Churuk v. Pullen*, No. 22-CV-1385 (KAD), 2023 WL 4850674, at *3 n.2 (D. Conn. July 28, 2023) ("Section 2241 is an improper vehicle for a retaliation claim where the prisoner is not being retaliated against on a continuing basis or being illegally held as a result thereof at the time the petition was filed.").

Her allegations of sexual abuse at FMC Lexington do not support any claim of ongoing constitutional violation; nor do her allegations suggest she remains subject to the retaliatory threats or mistreatment at FMC Lexington, FCI Waseca, or Dismas in violation of her constitutional rights. *See Rubbo v. Pullen,* No. 21-CV-109 (OAW), 2022 WL 4080485, at *1 (D. Conn. Sept. 6, 2022) (dismissing Section 2241 action as moot "because [Petitioner] has been removed from the conditions which he found unsafe"); *Anderson v. Williams*, No. 15-CV-1364 (VAB), 2018 WL 4623022, at *2 (D. Conn. Sept. 26, 2018) (finding that a habeas petitioner's transfer to a different facility "result[ed] in the mooting of any other claims based on conditions at [the transferor] facility"); *see also Salahuddin v. Goord,* 467 F.3d 263, 272

---

[28] *Id*. at 12.

[29] *Id.* at 13.

(2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

Accordingly, the Court considers only Petitioner's allegations that suggest she is subject to ongoing illegal confinement. Because Petitioner remains in BOP custody at FCI Danbury, the Court reviews whether Petitioner is now illegally confined because (1) her return to FCI Danbury resulted from retaliatory animus; and (2) her FSA credits are not being properly applied to return her to prelease custody or home confinement in violation of the FSA and her constitutional rights.

## A.      First Amendment Retaliation

To sustain a First Amendment retaliation claim, Petitioner must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (cleaned up). "[O]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (citation omitted). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered

8

adverse." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

Petitioner may demonstrate the necessary causal connection between the adverse action and the protected conduct or speech through circumstantial evidence, including the temporal proximity between an inmate's conduct and speech and adverse action, proof of prior good behavior by the inmate, vindication in a disciplinary proceeding arising from the alleged retaliation, and statements by the retaliator concerning his or her motivation. *See Jones v. Wagner*, No. 20-CV-00475 (VAB), 2022 WL 1525134, at *9 (D. Conn. May 13, 2022).

Even if Petitioner satisfies her burden to show that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' alleged adverse action, Respondent may then show by a preponderance of the evidence that the same action would have been taken "even in the absence of the protected conduct." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Mount Health Sch. Distr. v. Doyle*, 429 U.S. 274, 287 (1977)). "[I]f taken for both proper and improper reasons, [a challenged adverse action] may be upheld if the action would have been taken based on the proper reasons alone." *See id.*; *Scott v. Coughlin*, 344 F.3d 282, 287–88 (2d Cir. 2003) ("Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without the improper motivation the alleged retaliatory action would have occurred."); *Marino v. Watts*, No. 12-CV-0801, 2014 WL 1794588, at *5 n.5 (N.D.N.Y. May 6, 2014) ("There is no constitutional violation where a misbehavior report is motivated by a sufficient proper reason, even if it was also motivated by an improper reason.") (citing *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)). "A finding of sufficient permissible reasons to justify state action is readily drawn in

9

the context of prison administration" because prisoners' retaliation claims are examined "with skepticism and particular care" due to the ease with which they may be fabricated and because "courts have been cautioned to recognize that prison officials have broad administrative authority." *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 412 (D. Conn. 2016), *aff'd,* 720 F. App'x 79 (2d Cir. 2018) (cleaned up)).

Here, Respondent's evidence substantiates that Petitioner's return to custody at FCI Danbury custody was justified under 18 U.S.C. § 3624(g)(5)—regardless of any retaliatory animus towards Petitioner—after the disciplinary proceeding determined Petitioner's violations of her prelease conditions. Petitioner presents no challenge to the process afforded for her disciplinary proceedings, and she cannot refute that she was found guilty of all six of her charged infractions. *Stegemann v. Warden*, No. 20-CV-1247, 2023 WL 11643964, at *7 (N.D.N.Y. Apr. 24, 2023) ("The fact that Petitioner did, in fact, violate prison rules as charged by the allegedly retaliatory report belies his retaliation claim."), *report and recommendation adopted sub nom.*, *Stegemann v. Brook*, 2024 WL 1756431 (N.D.N.Y. Apr. 24, 2024); *see, e.g.*, *Marino v. Watts*, No. 9:12-CV-0801, 2014 WL 1794588, at *5 n.5 (N.D.N.Y. May 6, 2014) ("There is no constitutional violation where a misbehavior report is motivated by a sufficient proper reason, even if it was also motivated by an improper reason."). Accordingly, the record does not show that she is being held illegally on grounds that her return to custody at FCI Danbury resulted from First Amendment retaliation and was not otherwise justified.

### B.    Failure to Apply FSA Time Credits

Nor has Petitioner shown that she is being improperly denied application of her FSA time credits in violation of the FSA or her constitutional rights.

Under Section 3624(g)(5), a prisoner—like Petitioner—who has been returned to BOP incarcerated custody after a prelease revocation for violation of prelease condition may be required to "serve the remainder of the term of imprisonment to which the prisoner was sentenced, or any portion thereof, in prison." 18 U.S.C. § 3624(g)(5); *see, e.g.*, *Palmer v. Flowers*, No. 25-CV-356 (SVN), 2025 WL 1220183, at *3 (D. Conn. Apr. 28, 2025) ("[BOP] maintains discretion to revoke an inmate's RRC placement and return him to prison if he violates the conditions of his RRC placement"). Respondent's evidence shows that the BOP is calculating Petitioner's anticipated release date with application of her FSA time credits. Because the FSA is being properly applied to Petitioner's sentence, she cannot maintain that her custody at FCI Danbury violates the Eighth Amendment. Thus, the Court concludes Petitioner has not satisfied her burden to show she is illegally held at FCI Danbury due to the BOP's retaliatory or improper refusal to apply her FSA time credits.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Petition for Relief under 28 U.S.C. § 2241 (ECF No. 1).  The Clerk is kindly instructed to close this case.

**SO ORDERED.**

Hartford, Connecticut
May 1, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

11